UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

MICHELLE R.,

    Plaintiff,

v.

VILLAGE OF MIDDLEPORT, *et al.*,

    Defendants.

Case No. 2:19-cv-2272
JUDGE EDMUND A. SARGUS, JR.
Magistrate Judge Kimberly A. Jolson

## OPINION AND ORDER

This matter is before the Court on Defendant Village of Middleport's ("Middleport") *Motion for Judgment on the Pleadings* (ECF No. 7) and Defendant Meigs County Board of Commissioners' (the "Meigs County Board" or the "Board") *Motion to Dismiss for Failure to State a Claim* (ECF No. 8). The parties have fully briefed these matters, which are therefore ripe for review. For the reasons stated below, the Court **GRANTS** Middleport's *Motion for Judgment on the Pleadings* (ECF No. 7) and the Meigs County Board's *Motion to Dismiss* (ECF No. 8).

### I.

**A. Michelle R.'s Allegations**

In 2015, a Meigs County Court of Common Pleas judge placed Plaintiff Michelle R. on probation after she was convicted of a low-level, non-violent felony. (Pl.'s Compl. at ¶¶ 9, 10.) The judge also assigned Defendant Larry Tucker ("Tucker") to serve as Michelle R.'s probation officer.[1] (*Id.* at ¶ 11.) The Meigs County Court of Common Pleas employed Tucker as a probation

---

[1] In her Complaint (ECF No. 1), Michelle R. names the Meigs County Board of Commissioners as a defendant but alleges that "Defendant Meigs County assigned Defendant Larry Tucker as Plaintiff's probation officer as part of her community control." (*Id.* at ¶ 11.) As discussed *infra*, Common Pleas judges assign probation officers to defendants in Ohio. *See* Ohio Rev. Code § 2301.12. It is unclear whether this allegation refers to the Meigs County Board of Commissioners or the Meigs County Court of Common Pleas.

officer, bailiff, and clerk. (*Id.* at ¶ 6.) Middleport employed Tucker as a corrections officer at the Middleport Jail. (*Id.*) Tucker's positions gave him authority over Michelle R., which he abused by sexually assaulting her on three occasions and threatening to send her back to jail if she did not comply with his orders. Because both motions claim that the Complaint should be dismissed, the Court is required to consider the allegations made by Michelle R. as true.

### *The First Incident*

In August 2016, Tucker drove Michelle R. to her home in West Virginia after she attended a court-ordered addiction treatment appointment in Pomeroy, Ohio. (*Id.* at ¶ 16.) While driving, Tucker began kissing Michelle R.'s hand. (*Id.*) When they arrived at her home, Tucker got out of the car, grabbed Michelle R., and forcefully kissed her on the mouth. (*Id.*) Michelle R. tried to pull away from Tucker but feared that if she upset him, he might use his position of authority against her. (*Id.*) Tucker then asked Michelle R. if he could join her inside the house. (*Id.* at ¶ 17.) Before Michelle R. could respond, her mother arrived and interrupted Tucker's attempted assault. (*Id.*) Because of this incident, Michelle R. feared Tucker. (*Id.* at ¶ 18.)

### *The Second Incident*

On February 13, 2017, Michelle R. failed to attend a probation hearing before the Meigs County Court of Common Pleas. (*Id.* at ¶ 19.) The Meigs County Prosecutor then moved to revoke her community control. (*Id.* at ¶ 20.) Michelle R. later explained to the prosecutor and judge that she did not deliberately miss the hearing but failed to attend because she was given the wrong date. (*Id.* at ¶ 19, 21.)

The Meigs County Court of Common Pleas held a revocation hearing on March 1, 2017. (*Id.* at ¶ 22.) Michelle R., her boyfriend, and Tucker all attended the hearing. (*Id.*) Upon seeing Michelle R.'s boyfriend, Tucker's facial expression immediately changed. (*Id.*) Tucker then met

2

with the judge and prosecutor in chambers. (*Id.* at ¶ 27.) After all three returned to the courtroom together, the judge revoked Michelle R.'s probation and ordered her to be immediately incarcerated in the Middleport Jail before being transferred to the STAR Community Justice Center. (*Id.*) Michelle R. then spent three days in the Middleport Jail, where Tucker was a corrections officer. (*Id.* at ¶ 29.)

On March 14, 2017, Tucker transported Michelle R. to the STAR Community Justice Center. (*Id.* at ¶ 32.) Shortly after beginning the 90-minute drive, Tucker stopped at a gas station, let Michelle R. out of the car, and bought her Mountain Dew and cigarettes. (*Id.* at ¶ 33.) When they returned to the car, Tucker told Michelle R. to sit in the front seat. (*Id.*) Then, about halfway through the trip, Tucker forced his hand down Michelle R.'s jeans and "stuck a finger in her vagina." (*Id.* at ¶¶ 34, 35.) Michelle R. began to cry but turned her head away from Tucker to hide the tears. (*Id.* at ¶ 36.) When Tucker dropped Michelle R. at the STAR Community Justice Center, he told her to call him when she was released. (*Id.* at ¶ 37.) Michelle R. was incarcerated from March 14, 2017, to July 10, 2017. (*Id.* at ¶ 38.)

### *The Third Incident*

A few weeks after she was released in July 2017, Michelle R. saw Tucker again in court. (*Id.* at ¶ 39.) He approached her, told her she was "looking really good," and touched her inappropriately. (*Id.*) This caused Michelle R. to have an emotional breakdown. (*Id.*)

### *Subsequent Events*

After returning home in July 2017, Michelle R. contacted Day Report in Point Pleasant, West Virginia, and reported Tucker's actions. (*Id.* at ¶ 41.) The Ohio Bureau of Criminal Investigations then began investigating Tucker. (*Id.*) This investigation revealed that at least 11 other women had reported similar allegations against Tucker. (*Id.* at ¶ 42.) Some of those victims

3

had reported Tucker to the Meigs County Common Pleas Court and the Middleport Jail before March 2017. (*Id.*) Despite their awareness of these allegations, Middleport and the Meigs County Board did nothing. (*Id.*)

On May 3, 2018, Tucker was indicted on 25 charges, including sexual battery, kidnapping, and attempting to compel prostitution. (*Id.* at ¶ 43.) The charges involved 12 victims, including Michelle R. and other women under Tucker's supervision. (*Id.*) On May 2, 2019, a jury found Tucker was guilty of 24 counts. (*Id.* at ¶ 44.)

**B. Procedural History**

Michelle R. filed her Complaint on May 30, 2019, asserting claims against Middleport, the Meigs County Board, and Tucker, in both his individual and official capacities. Those claims are as follows: (1) a 42 U.S.C. § 1983 ("section 1983") claim against Tucker for violating her federal civil rights, (2) a section 1983 *Monell* claim against Middleport and the Meigs County Board; (3) an abuse of process claim against Tucker; and (4) an intentional infliction of emotional distress claim against Tucker. (*See generally* Pl.'s Compl.) Middleport now moves the Court for partial judgment on the pleadings regarding Michelle R.'s *Monell* claim to the extent it arises from allegations barred by the statute of limitations. The Meigs County Board moves to dismiss the *Monell* claim, arguing it fails as a matter of law.

**II.**

A motion filed under Federal Rule of Civil Procedure 12(c) attacks the sufficiency of the pleadings and is evaluated under the same standard as a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss. *EEOC v. J.H. Routh Packing Co.*, 246 F.3d 850, 851 (6th Cir. 2001) (citation omitted).

Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Although this pleading standard does not require "'detailed factual allegations,' ... [a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action'" is insufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Instead, to survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), "a complaint must contain sufficient factual matter ... to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Facial plausibility is established "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

In considering whether this facial plausibility standard is met, a Court must construe the complaint in the light most favorable to the non-moving party, accept all factual allegations as true, and make reasonable inferences in favor of the non-moving party. *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir.2008) (citations omitted). The Court is not required, however, to accept as true mere legal conclusions unsupported by factual allegations. *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

### III.

**A. Middleport's Motion for Judgment on the Pleadings**

On May 30, 2019, Michelle R. filed her Complaint, alleging three incidents of sexual misconduct by Tucker that occurred on or around the following dates: (1) August 2016; (2) March 14, 2017; and (3) late-July 2017. Pl.'s Compl. at ¶¶ 16, 35, 39. The statute of limitations for section 1983 actions arising in Ohio is governed by Ohio Revised Code § 2305.10, which requires a plaintiff to file an action within two years of its accrual. *Browning v. Pendleton*, 869 F.2d 989, 992

(6th Cir. 1989) (en banc); *see* Ohio Revised Code § 2305.10. Therefore, the parties agree the August 2016 and March 14, 2017 allegations cannot support Michelle R.'s *Monell* claim against Middleport and the Meigs County Board since they are barred by the statute of limitations. Nevertheless, Michelle R. argues that the principles of equitable tolling save those allegations. For the reasons stated below, the Court disagrees.

### *1. Ohio's Tolling Statute*

Since Ohio's statute of limitations applies to section 1983 claims, so does its tolling statute, unless the result is inconsistent with federal law. *John v. Memphis Light Gas & Water Div.*, 77 F.3d 838, 845 (6th Cir. 2015) (citing *Bishop v. Children's Ctr. for Developmental Enrichment*, 618 F.3d 533, 537 (6th Cir. 2010)). Under Ohio law, the statute of limitations for section 1983 claims may only be tolled when—at the time the cause of action accrued— the plaintiff was either a minor or was "of unsound mind." Ohio Rev. Code § 2305.16. Ohio law defines "of unsound mind" as "all forms of derangement or intellectual disability." Ohio Rev. Code § 1.02; *see also Fisher v. Ohio University*, 63 Ohio St. 3d 484, 488, 589 N.E.2d 13 (1992) (equating "derangement" with "insanity"). The parties argue at length about the first element—whether Michelle R.'s alleged impairments establish that she was mentally disabled.

But analyzing Michelle R.'s intellectual disability is unnecessary because she fails the second element—she was not "of unsound mind" at the time of accrual. In her Complaint, Michelle R. avers that her mental state changed *after* the March 14, 2017 incident. Pl.'s Compl. at ¶ 40 ("Since March 2017, and since encountering Tucker again in July 2017, Plaintiff's mental and physical state have changed drastically. ... She has since been diagnosed with mental disabilities related to her interactions with Defendant Tucker."). So, taking her allegations as true, Michelle

6

R. was not of unsound mind when the allegations in August 2016 and on March 14, 2017 accrued.[2] Thus, the Ohio tolling statute does not save those claims from the statute of limitations.

## *2. Equitable Tolling*

Next, Michelle R. contends that she is entitled to federal equitable tolling. But as discussed *supra*, Ohio's tolling rules apply to her section 1983 claims unless the result of applying those rules are inconsistent with federal law or policy. Michelle R. does not argue that Ohio's rules clash with federal law. She thus forfeits any argument she might have had regarding the federal equitable tolling rules, since asserting inconsistency is "the only circumstance in which [the Court] could apply the federal rules." *Roberson v. Macnicol*, 698 Fed. Appx. 248, 250–51 (6th Cir. 2017) (citing *Johnson v. Memphis Light Gas & Water Div.*, 777 F.3d 838, 845 (6th Cir. 2015)).

But even if Michelle R. could rely on federal tolling rules here, her argument would still fail. In general, equitable tolling is available when a litigant fails to meet a legally-mandated deadline due to unavoidable circumstances beyond her control. *Zappone v. United States*, 870 F.3d 551, 556 (6th Cir. 2017). While "tolling may be applied in suits against the government, courts will only do so sparingly, and not when there has only been a garden variety claim of excusable neglect." *Id.* (citing *Chomic v. United States*, 377 F.3d 607, 615 (6th Cir. 2004)). A litigant carries the burden of establishing her entitlement to equitable tolling. *Id.* (citation omitted).

To establish mental incapacitation warranting equitable tolling, Michelle R. must show that (1) she is mentally incompetent, and (2) her mental incompetence caused her failure to comply with the statute of limitations. *Ata v. Scutt*, 662 F.3d 736, 742 (6th Cir. 2011). Michelle R. contends that she was "mentally afraid and medically diagnosed with several mental conditions rendering

---

[2] Michelle R. does not dispute that any claims arising from the occurrences in August 2016 and on March 14, 2017 began to run on those dates. Federal law dictates when section 1983 claims accrue. *Cooey v. Strickland*, 479 F.3d 412, 416 (6th Cir. 2007). Under federal law, section 1983 claims begin to accrue when the plaintiff knows or has reason to know that the act providing the basis of her injury has occurred. *Id.*

7

her disabled" after her encounters with Tucker. Pl.'s Compl. at ¶ 54. She then asserts that she "was frightened to file a civil lawsuit against the Defendants until Tucker was convicted and behind bars and no longer had the ability to harm her or cause her additional legal troubles." *Id.*

Even if Michelle R.'s allegations demonstrate that she was mentally incompetent, she cannot show that her incompetence caused her failure to comply with the statute of limitations. For one, courts in the Sixth Circuit have refused to toll section 1983 claims where the plaintiff failed to timely file suit for fear of retaliation by the defendant. *Grisson v. Henderson Cnty*, 869 F.2d 1490 (Table), 1989 WL 20629, at *1 (6th Cir. 1989); *Ingram v. Tennessee Dept of Health*, No. 3:17-cv-1565, 2019 WL 1429644, at *15 (M.D. Tenn. Mar. 29, 2019); *see also Amer v. Judson Center, Inc.*, No. 11-cv-11083, 2011 WL 6812873, at *5 (E.D. Mich. Dec. 28, 2011). Moreover, although Michelle R. alleges that she feared retribution if she filed suit, after her release from incarceration in July 2017 she contacted the authorities and reported Tucker's actions. *See* Pl.'s Compl. at ¶ 41. While the Court empathizes with the hardships Michelle R. has suffered, her Complaint does not allege circumstances that justify equitable tolling. Accordingly, even if Michelle R. had properly raised the issue of equitable tolling, she has not established that she is entitled to that remedy.

In conclusion, the Court **GRANTS** Middleport's *Motion for Judgment on the Pleadings*, thereby **DISMISSING** Michelle R.'s *Monell* claim against Middleport, to the extent it arises from her allegations that occurred before May 30, 2017.

### B. The Meigs County Board's Motion to Dismiss

Michelle R. also brings a *Monell* claim against the Meigs County Board, which she describes as "a unit of local government duly organized and existing under the laws of the State of Ohio and owns, operates, manages, directs and controls the Meigs County Common Pleas Court,

which employed Defendant Tucker as a probation officer/bailiff/clerk." Pl.'s Compl. at ¶ 5. The Board argues that the Court must dismiss this claim because the Board never employed Tucker. For the reasons stated below, the Court agrees.

Michelle R.'s *Monell* claim against the Meigs County Board for alleged injuries she suffered at the hands of Tucker fails as matter of law. Under Ohio law, the court of common pleas—not the Board of Commissioners—appoints, compensates, and supervises probation officers and bailiffs. Ohio Rev. Code §§ 2301.12 and 2301.27. Therefore, Ohio Boards of Commissioners have neither the power nor a duty to control bailiffs or probation officers.

And Michelle R. cannot rely upon the theory of *respondeat superior* to impose liability on the Meigs County Board. *Ridgeway v. Union County Comm'rs*, 775 F. Supp. 1105, 1109–10 (S.D. Ohio 1991) (fact that county commissioners are responsible for funding the sheriff's department and administering county government does not extend liability to the commissioners); *see also Miller v. Calhoun County*, 408 F.3d 803, 813–14 (6th Cir. 2005) (county may be liable only where its policy or custom causes the constitutional violation and state law empowers the county to establish that policy or custom); *Knott v. Sullivan*, 418 F.3d 561, 574 (6th Cir. 2005) (affirming grant of summary judgment for defendant county commissioners where commissioners did not participate in allegedly unconstitutional conduct). Thus, Michelle R. cannot state a *Monell* claim against the Board because it neither participated in the alleged conduct nor employed or controlled Tucker.

Michelle R. does not address the adequacy of her pleadings but instead requests leave to amend her complaint so she can substitute other government entities as defendants. However, such an amendment is unnecessary since, even without amending, Michelle R. might still hold some government entities liable based on her claims against Tucker in his official capacity as a probation

9

officer, bailiff, and clerk of the Meigs County Court of Common Pleas and as a corrections officer of the Middleport Jail.

In conclusion, the Court **GRANTS** the Meigs County Board's *Motion to Dismiss* and hereby **DISMISSES with PREJUDICE** Michelle R.'s *Monell* claim against the Board.

## IV. CONCLUSION

For the reasons stated above, the Court **GRANTS** Middleport's *Motion for Judgment on the Pleadings* (ECF No. 7) and the Meigs County Board's *Motion to Dismiss* (ECF No. 8). Therefore, the Court **DISMISSES with PREJUDICE** Michelle R.'s *Monell* claim against Middleport, to the extent it arises from allegations that occurred before May 30, 2017. Further, the Court **DISMISSES with PREJUDICE** Michelle R.'s *Monell* claim against the Meigs County Board.

**IT IS SO ORDERED.**

9-17-2019
**DATE**

EDMUND A. SARGUS, JR.
UNITED STATES DISTRICT JUDGE