# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

MICHELLE R.,

        **Plaintiff,**

                              Case No. 2:19-cv-2272
v.                              JUDGE EDMUND A. SARGUS, JR.
                              Magistrate Judge Kimberly A. Jolson

**VILLAGE OF MIDDLEPORT**
**OHIO,** *et al.,*
        **Defendants.**

## OPINION & ORDER

This matter is before the Court on Defendant Larry Tucker's ("Tucker") Motion for Partial Judgment on the Pleadings (ECF No. 29). Plaintiff Michelle R. ("Michelle R." or "Plaintiff") has filed a Response in Opposition (ECF No. 30). Defendant has filed a Reply in Support (ECF No. 31). Thus, the motion is ripe for review. For the following reasons, Defendant's Motion for Partial Judgment on the Pleadings (ECF No. 29) is **GRANTED.**

### I.

**A. Michelle R.'s Allegations**

In 2015, a Meigs County Court of Common Pleas ("the Court") judge placed Plaintiff Michelle R. on probation after she was convicted of a low-level, non-violent felony. (Am. Compl. at ¶¶ 8–9, ECF No. 25.) The judge assigned Tucker to serve as Michelle R.'s probation officer. (*Id.* ¶ 10.) The Court employed Tucker as a probation officer, bailiff, and clerk. (*Id.* ¶ 5.) The Village of Middleport, Ohio ("Middleport") employed Tucker as a corrections officer at the Middleport Jail. (*Id.* ¶ 4.) Tucker's positions gave him authority over Michelle R., which she alleges he abused by sexually assaulting her on three occasions and threatening to send her back to jail if she did not comply with his orders.

### The First Incident

In August of 2016, Tucker drove Michelle R. to her home in West Virginia after she attended a court-ordered addiction treatment appointment in Pomeroy, Ohio. (*Id.* ¶ 15.) While driving, Tucker began kissing Michelle R.'s hand. (*Id.*) When they arrived at her home, Tucker got out of the car, grabbed Michelle R., and forcefully kissed her on the mouth. (*Id.*) Michelle R. tried to pull away from Tucker but feared that if she upset him, he might use his position of authority against her. (*Id.*) Tucker then asked Michelle R. if he could join her inside the house. (*Id.* ¶ 16.) Before Michelle R. could respond, her mother arrived and interrupted Tucker's attempted assault. (*Id.*) Because of this incident, Michelle R. feared Tucker. (*Id.* ¶ 17.)

### The Second Incident

On February 13, 2017, Michelle R. failed to attend a probation hearing before the Court. (*Id.* ¶ 18.) The Meigs County Prosecutor then moved to revoke her community control. (*Id.* ¶ 19.) Michelle R. later explained to the prosecutor and judge that she did not deliberately miss the hearing but failed to attend because she was given the wrong date. (*Id.* ¶ 18, 23.)

The Court held a revocation hearing on March 1, 2017. (*Id.* ¶ 21.) Michelle R., her boyfriend, and Tucker all attended the hearing. (*Id.*) Upon seeing Michelle R.'s boyfriend, Tucker's facial expression immediately changed. (*Id.*) Tucker then met with the judge and prosecutor in the judge's chambers. (*Id.* ¶ 26.) After all three returned to the courtroom together, the judge revoked Michelle R.'s probation and ordered her to be immediately incarcerated in the Middleport Jail before being transferred to the STAR Community Justice Center. (*Id.*) Michelle R. then spent three days in the Middleport Jail, where Tucker was a corrections officer. (*Id.* ¶ 28.)

On March 14, 2017, Tucker transported Michelle R. to the STAR Community Justice Center. (*Id.* ¶ 31.) Shortly after beginning the 90-minute drive, Tucker stopped at a gas station,

let Michelle R. out of the car, and bought her Mountain Dew and cigarettes. (*Id.* ¶ 32.) When they returned to the car, Tucker told Michelle R. to sit in the front seat. (*Id.*) Then, about halfway through the trip, Tucker forced his hand down Michelle R.'s jeans and "stuck a finger in her vagina." (*Id.* ¶¶ 33–34.) Michelle R. began to cry but turned her head away from Tucker to hide the tears. (*Id.* ¶ 35.) When Tucker dropped Michelle R. at the STAR Community Justice Center, he told her to call him when she was released. (*Id.* ¶ 36.) Michelle R. was incarcerated from March 14, 2017, to July 10, 2017. (*Id.* ¶ 37.)

### The Third Incident

A few weeks after she was released in July 2017, Michelle R. saw Tucker again in court. (*Id.* ¶ 38.) He approached her, told her she was "looking really good," and touched her inappropriately. (*Id.*) This caused Michelle R. to have an emotional breakdown. (*Id.*)

### Subsequent Events

After returning home in July 2017, Michelle R. contacted Day Report in Point Pleasant, West Virginia, and reported Tucker's actions. (*Id.* ¶ 40.) The Ohio Bureau of Criminal Investigations then began investigating Tucker. (*Id.*) This investigation revealed that at least 11 other women had reported similar allegations against Tucker. (*Id.* ¶ 41.) Some of those victims had reported Tucker to the Court and the Middleport Jail before March of 2017. (*Id.*) Despite their awareness of these allegations, the village of Middleport and the Court did nothing. (*Id.*)

On May 3, 2018, Tucker was indicted on 25 charges, including sexual battery, kidnapping, and attempting to compel prostitution. (*Id.* ¶ 42.) The charges involved 12 victims, including Michelle R. and other women under Tucker's supervision. (*Id.*) On May 2, 2019, a jury found Tucker was guilty of 24 counts. (*Id.* ¶ 43.)

## B. Procedural History

Michelle R. filed her Complaint on May 30, 2019, asserting claims against Middleport, the Meigs County Board, and Tucker, in both his individual and official capacity. Those claims are as follows: (1) a 42 U.S.C. § 1983 ("section 1983") claim against Tucker for violating her federal civil rights, (2) a section 1983 *Monell* claim against Middleport and the Meigs County Board; (3) an abuse of process claim against Tucker; and (4) an intentional infliction of emotional distress claim against Tucker. (*See generally* Compl., ECF No. 1.)

The village of Middleport filed a motion for judgment on the pleadings as to Count II claiming parts of the claim were barred by the statute of limitations. (ECF No. 7.) The Court granted this motion and dismissed the *Monell* claim to the extent it arose out of allegations occurring before May 30, 2017. (ECF No. 21.)

Additionally, Meigs County Board of Commissioners filed a motion to dismiss for failure to state a claim. (ECF No. 8.) The Court granted this motion and terminated Meigs County Board of Commissioners as a defendant. (ECF No. 21.)

## II.

The Federal Rules of Civil Procedure provide that, "after the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). The standard of review for a Rule 12(c) motion for judgment on the pleadings is identical to the standard for a motion to dismiss under Rule 12(b)(6). *Sensations, Inc. v. City of Grand Rapids*, 526 F.3d 291, 295 (6th Cir. 2008). To state a claim upon which relief may be granted, Plaintiffs must satisfy the pleading requirements set forth in Rule 8(a). While Rule 8(a)(2) requires a pleading to contain a "short and plain statement of the claim showing that the pleader is entitled to relief," in order "[t]o survive a motion to dismiss, a complaint must contain sufficient factual

matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 677–78 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (clarifying the plausibility standard articulated in *Twombly*). Furthermore, "[a]lthough for purposes of a motion to dismiss [a court] must take all the factual allegations in the complaint as true, [it][is] not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* at 677–79 (quoting *Twombly,* 550 U.S. at 55) (internal quotations omitted). "Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id.* at 678–79.

In *Twombly*, the Supreme Court concluded that, to meet the Rule 8 standard, a complaint must "nudge [] [a plaintiff's] claims across the line from conceivable to plausible." 550 U.S. at 570. The Court held that "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his [entitlement] to relief [pursuant to Rule 8(a)(2)] requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555 (internal citations and quotations omitted). "[N]aked assertion[s] . . . without some further factual enhancement [] stop[] short of the line between possibility and plausibility of entitle[ment] to relief." *Id.* at 557 (internal quotations omitted).

In *Iqbal*, the Court explained that one of the "principles" underlying *Twombly* is that the ordinary rule that courts must accept as true allegations made in pleadings for purposes of deciding a Rule 12(b)(6) motion does not apply to legal conclusions. *Id.* at 678. In other words, "[w]hile legal conclusions can provide the framework of a complaint, they must be supported by factual

allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679.

A motion for judgment on the pleadings may be granted only if the moving party is clearly entitled to judgment. *Source Assocs. v. Valero Energy Corp.*, 273 F. App'x. 425, 427 (6th Cir. 2008).

### III.

Tucker moves for judgment to the extent that the Amended Complaint asserts a claim against him in is official capacity as a probation officer/clerk/bailiff of the Court and therefore is essentially a claim against the Court. (Def.'s Mot. J. Pleadings at 1, ECF No. 29, hereinafter "Def.'s Mot.") Tucker argues this claim must be dismissed for four reasons. The Court will begin with Tucker's argument that the Court has immunity under the Eleventh Amendment.

A suit against a government official in his official capacity is treated as a suit against the government entity. *Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985). The Amended Complaint sues Tucker in his official capacity "as a probation officer/bailiff/clerk [employed] by [the Court]." (Am. Compl. ¶ 5.) Tucker argues this is essentially a claim against the Commons Pleas Court. Plaintiff argues this is a claim against Meigs County because the Court is a division of Meigs County. Plaintiff's argument is not well-taken.

Plaintiff's Amended Complaint is clear, the suit is against Tucker in his capacity as an employee of the Court, not Meigs County. This case is factually similar to *Beckham v. City of Euclid*, No. 1:14 CV 696, 2015 U.S. Dist. LEXIS 17253 (N.D. Ohio Dec. 29, 2015). In *Beckham*, the Plaintiff sued a probation officer and a bailiff of the City of Euclid Municipal Court under section 1983. *Id.* at *20–21. Our sister district construed this as a suit against the City of Euclid Municipal Court because the defendants were employees of the City of Euclid Municipal Court.

6

*Id.* at \*21; *see also Gorneleh v. City of Kettering*, No. 3:17-cv-181, 2017 U.S. Dist. LEXIS 166879, at \*9 (S.D. Ohio Oct. 10, 2017) (construing claims against two judges in their official capacities as claims against the municipal court).

The Amended Complaint contains no allegations that Tucker worked for Meigs County. Additionally, after Plaintiff originally sued Meigs County Board of Commissioners, she asked for leave to amend the Complaint to "expressly clarify that her *Monell* [] claims are against . . . Larry Tucker in his official capacity as an employee of [the Court]." (ECF No. 23 at 2.) Plaintiff did not seek to add Meigs County or Tucker as an employee of Meigs County. (*Id.*) Plaintiff cites *Orr v. Trumbull County*, 77 F. Supp. 2d 853 (N.D. Ohio 1999) for her contention that the suit is against Meigs County. *Orr*, however, is a suit against a sheriff in his official capacity, which the court found was a suit against the county. *Id. Orr* does not support Plaintiff's argument that this suit was intended to be against Meigs County. The Court finds that this suit is essentially a suit against the Court. Next, the Court addresses Tucker's argument that the Court has immunity.

The Sixth Circuit has held that Ohio county and municipal courts are arms of the state[1] and therefore are immune from suit under the Eleventh Amendment.[2] *Mumford v. Basinsski*, 105 F.3d 264, 270 (6th Cir. 1997); *see also Whorton v. Cognitians, LLC*, No. 19-3488, 2019 U.S. App.

---

[1] Plaintiff's response notes that the Supreme Court has refused to extend sovereign immunity to counties, cities, and towns. (Pl.'s Resp. at 3–4 (citing *Lake County Estates v. Tahoe Regional Planning Agency*, 440 U.S. 391, 400–01 (1979). Under *Mumford*, however, Municipal Courts are arms the state, not counties, cities, or towns.

[2] As our sister district, the Northern District of Ohio, has recognized, "the law is somewhat unsettled in this area in the wake of rulings from the United States Supreme Court emphasizing the need to consider whether the state would be legally liable for any judgment in a sovereign-immunity analysis." *Holt v. Bedford Mun. Court*, No. 1:18 CV 2996, 2019 U.S Dist. LEXIS 47114, at \*4 n.18 (N.D. Ohio Mar. 21, 2019) (citing *Alkire v. Irving*, 330 F.3d 802, 812 (6th Cir. 2003) (noting "[i]t is plain that the reasoning in *Mumford*, if not the result, is now incorrect in light of the Supreme Court's decision in [*Hess v. Port Authority Trans-Hudson Corp.*, 513 U.S. 30 (1994),]" and remanding to the lower court to consider which entity would pay the damages)). Nonetheless, the Sixth Circuit has not overruled its prior decisions finding the municipal courts in Ohio to be arms of the state for purposes of Eleventh Amendment immunity. *Id.*; *see Triplett v. Connor*, 109 F. App'x 94, 96 n.4 (6th Cir. 2004) (acknowledging "some doubt about the continued validity of *Mumford*'s reasoning," but holding "we have not, however, decided that *Mumford* was incorrect"); *Ward v. City of Norwalk*, 640 F. App'x 462, 465 (6th Cir. 2016) ("*Alkire*'s emphasis on the source-of-payment factor does not change the conclusion that the Norwalk Municipal Court is an arm of the state for § 1983 and Eleventh Amendment purposes, and plaintiffs' money-damage claims against [defendants] in their official capacities are therefore barred.").

LEXIS 36514, at *4 (6th Cir. Dec. 9, 2019) ("[T]he district court properly dismissed with prejudice all claims against the Dayton Municipal Court, because Ohio state courts, including municipal courts, are entitled to Eleventh Amendment Immunity from suit."); *Vaughn v. Common Pleas Court of Montgomery Cty*, No. 16-4284, 2017 U.S. App. LEXIS 23741, at *2–3 (6th Cir. May 4, 2016) ("[T]he courts of common pleas are an arm of the state of Ohio, and consequently they are immune from suit under § 1983 pursuant to the Eleventh Amendment."); *Howard v. Preble Cty Sherrif*, No. 3:18-cv-410, 2019 U.S. Dist. LEXIS 137880, at *16–17 (S.D. Ohio Aug. 15, 2019) ("[T]o the extent [the] [p]laintiffs purport to assert a claim against the Eaton Municipal Court . . . such [a] claim[] [is] barred by the Eleventh Amendment."); *Smyczek v. Municipality of Lakewood*, No. 1:19 CV 330, 2019 U.S. Dist. LEXIS 73544, at *11 n.3 (N.D. Ohio May 1, 2019) (noting Lakewood Municipal Court is immune from liability because [t]The Sixth Circuit has extended [the State of Ohio's] immunity to Ohio courts."); *Gorneleh*, 2017 U.S. Dist. LEXIS 166879 at *9 ("Insofar as [the plaintiff] asserts claims against Judges Dressel and Long in their official capacities, the undersigned notes that such claims are essentially claims against the Kettering Municipal Court, and are barred by the Eleventh Amendment.").

Plaintiff argues the Court does not have immunity because Ohio Revised Code § 9.86 and § 2743.02, giving public officers immunity and requiring a claim to be brought in the Court of Claims in order to determine if Ohio has waived immunity, does not apply to section 1983 claims. (Pl.'s Resp. at 4.) Plaintiff states "the United States Supreme Court has concluded that '[c]onduct by persons acting under color of state law which is wrongful under 42 U.S.C. § 1983 or § 1985(3) cannot be immunized by state law." (*Id.* (citing *Howlett v. Rose*, 496 U.S. 356, 276 (1999).)

Plaintiff is correct that Ohio immunity statutes, such as Ohio Revised Code §2743.02, apply only to state law claims. *See Besser v. Dexter*, 589 N.E.2d 77, 78 (Oh Ct. App. 1990) ("The

procedure for determining immunity/liability of state employees under [Ohio Revised Code §] 2743.03 only applies to state law causes of action."). Ohio Revised Code § 2743.02, thus, waives Ohio's sovereign immunity for state law claims. (*Id.*) This claim, however, under § 1983, is a federal claim. Importantly, "[a] state maintains Eleventh Amendment immunity from suit in federal court though it has waived immunity from liability and consented to be sued in its own courts." *Herbst v. Voinovich*, 9 F. Supp. 2d 828, 832–33 (N.D. Ohio 1998) (citing *Ford Motor Co. v. Dep't of Treasury*, 323 U.S. 459, 465 (1945)); *see also Ohio v. Madeline Nursing Homes # 1 & # 2*, 694 F.2d 449, 460 (6th Cir. 1982) (finding Ohio did not waive Eleventh Amendment immunity in federal court by virtue of § 2743.02 because "where the sovereign consents to be sued in a specially designated court, any resulting waiver is not general but is confined to actions brought in the forum designated."). This argument, thus, is unpersuasive.

The Meigs County Common Pleas Court is entitled to immunity. Judgment is GRANTED for Tucker on any claim against Tucker in his official capacity as a probation officer/bailiff/clerk of the Court. The Court need not address Tucker's other arguments.

## IV.

For the reasons set forth above, Tucker's Motion for Partial Judgment on the Pleadings (ECF No. 29) is **GRANTED.**

**IT IS SO ORDERED.**

_3-17-2020_

**DATE**

**EDMUND A. SARGUS, JR.**
**UNITED STATES DISTRICT JUDGE**